■ In the Matter of RICHARD M. LATA, Petitioner, v ALAN G. HEVESI, as State Comptroller, Respondent. [838 NYS2d 185]—

Peters, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which denied petitioner's application for performance of duty disability retirement benefits.

Petitioner, a correction officer, filed an application for performance of duty disability retirement benefits pursuant to Retirement and Social Security Law § 507-b (a), after sustaining several injuries to his knees. When petitioner's application was denied in November 2001, he filed a request for a rehearing and redetermination. During the course of several hearings, testimony was elicited about two relevant injuries that he incurred while discharging his duties as a correction officer— one on June 17, 1996 where petitioner injured his left knee and another on December 28, 1998 where petitioner injured his right knee. With respondent previously acknowledging that petitioner was permanently disabled and, therefore, approved for disability retirement benefits (see Retirement and Social Security Law § 507-a [c]), the only issue was whether petitioner's disability was the "natural and proximate result of an injury" he sustained while discharging his duties as a correction officer (see Retirement and Social Security Law § 507-b [a]).

Petitioner proffered his own testimony, as well as that of his primary care physician and orthopedic surgeon, Michael Grant. Grant began treating petitioner's knee injuries in 1997 and had, during the course of five years, performed three surgeries on petitioner's left knee and two surgeries on his right knee. Reviewing numerous objective tests and his treatment history of petitioner, Grant opined that petitioner's disability was directly related to the injuries he sustained to both knees while discharging his duties. Testifying on behalf of the New York State and Local Employees' Retirement System was Lawrence

Bone, an orthopedic surgeon, who claimed that petitioner's disability resulted not from the injuries he sustained in the June 1996 and December 1998 incidents but from a preexisting degenerative disorder. Bone based his opinion on a review of petitioner's medical records, including X rays, MRIs and operation reports from Grant, as well as his own physical examination. The Hearing Officer credited Bone's conclusions over Grant's and, therefore, denied petitioner's application. After respondent adopted that finding, this CPLR article 78 proceeding ensued.

Focusing on the issue of whether petitioner's disability was the "natural and proximate result of an injury" sustained while discharging his duties as a correction officer (see Retirement and Social Security Law § 507-b [a]), we recognize that respondent has the authority to credit one expert's testimony over the other (see Matter of Zindell v Hevesi, 27 AD3d 996, 997 [2006]; Matter of Stern v Hevesi, 12 AD3d 831, 832 [2004]; Matter of Wawrzynek v New York State & Local Retirement Sys., 291 AD2d 627, 628 [2002]; Matter of Harper v McCall, 277 AD2d 589, 590 [2000]), especially where, as here, the expert's opinion is based on medical records and physical examinations (see Matter of Harper v McCall, supra at 590). The underpinnings of Bone's conflicting opinion was the two sets of MRIs ordered by Grant, one taken nine days after the June 1996 incident and the other taken nearly one year later. Neither of these MRIs showed any significant damage or trauma to petitioner's left knee. Contrary to Grant's opinion that the trauma to both knees accelerated the deterioration of each knee individually, Bone opined that "if he had enough trauma to that [left] knee to cause death of the cartilage . . . , it certainly would have shown up on the [MRI] nine days later." For this reason, Bone contended that petitioner was suffering from a progression of degenerative arthritis which was not severe enough at the time of the MRI to make a positive showing. While Bone did acknowledge that the meniscal tear on petitioner's left knee could have been caused during the 1996 incident, Bone contended that the injury did not induce petitioner's degenerative arthritis that was found in that knee as well. Bone stated that the concentration of chondromalacia* in petitioner's right knee, with the presence of less severe chondromalacia throughout the entire knee, further confirmed his opinion that it was not caused by the trauma of the December 1998 incident, but was instead a degenerative condition.

* Chondromalacia is defined as a softening of the cartilage and results in damage to the grinding surface of joints.

With Bone providing an "articulated, rational and fact-based opinion" (*Matter of Wawrzynek v New York State & Local Retirement Sys., supra* at 628), predicated upon his review of petitioner's medical records and a physical examination, the Hearing Officer properly exercised his discretion to credit Bone's testimony over that of Grant's. Respondent's adoption of that determination was, therefore, supported by substantial evidence (*see Matter of Esposito v Hevesi*, 30 AD3d 667, 668 [2006]; *Matter of Zindell v Hevesi, supra* at 997; *Matter of Wawrzynek v New York State & Local Retirement Sys., supra* at 628; *Matter of Harper v McCall, supra* at 590).

Mercure, J.P., Crew III, Mugglin and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.